OTTO FISSEL, *et al.* Appellants, *vs.* AUGUST FISSEL, JR.,
*et al.* Appellees.

*Opinion filed June 16, 1914.*

1. WILLS—*what does not show that testator was not of sound
mind.* The fact that the testator by his will disposed of the entire
interest in a farm whereas he only owned a one-half interest there-
in is not a conclusive circumstance that he did not possess testa-
mentary capacity, where there is abundant evidence that he was of
sound mind and memory.

2. SAME—*when failure of testator to dispose of personal prop-
erty is not material.* Failure of the testator to dispose of his per-
sonal property by his will is not a circumstance indicating want of
testamentary capacity, where the attorney who drew the will called
his attention to the fact, upon which the testator stated that he only
wanted to dispose of his land by the will.

3. SAME—*what does not show undue influence.* The fact that
the testator's son, who was one of the principal beneficiaries of the
will, wrote the memorandum from which the will was prepared
does not show undue influence, where it is also shown that the
testator, who was unable to read or write, took the memorandum
to a lawyer, who read it over to him and discussed it with him and
thereafter prepared the draft of the will.

APPEAL from the Circuit Court of McLean county; the
Hon. COLOSTIN D. MYERS, Judge, presiding.

HART, FLEMING & PRATT, for appellants.

JOHN T. LILLARD, (W. W. WHITMORE, guardian
*ad litem,*) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants, Otto Fissel, Edith Bowers, Rose Hartley
and Mollie Hale, surviving children of August Fissel, Sr.,
together with their children, as complainants, filed their bill
in chancery in the circuit court of McLean county to con-
test and set aside the will of said August Fissel, Sr. The
widow, Mina Fissel, and two sons of the testator, August

and Fred, a daughter, Emma Dement, and the children of said two sons and daughter, were made defendants. The bill alleged August Fissel, Sr., was not of sound mind and memory and did not have testamentary capacity at the time he made the will, and that he was procured to make it by the undue influence of August Fissel, Jr.

The will was executed January 28, 1913, and the testator died the second day of February following. At the time the will was executed the testator was about seventy years of age and confined to his bed with a serious illness, from which he died a few days later. He left property, personal and real, worth from $35,000 to $40,000. He stated in the second paragraph of his will that on account of his wife's health and her inability to transact business he made her no specific bequest, but enjoined upon his children to see to it that she was maintained in comfort so long as she lived, and her support was made a charge against the property devised to his children. By the third paragraph he devised a farm of 82.21 acres to his three sons, August, Fred and Otto, for their joint lives, and as each of the sons died, one-third of the income from the farm was to go to the children of the deceased son until all three sons were dead, when one-third was to go to and vest in the children of August, one-third to the children of Fred and one-third to the children of Otto. By the fourth paragraph he devised to his son August, for life, premises in Normal on which a feed store and mill were situate, being lot 10 and the south twenty feet of lot 9, in block 7, in the original town of Normal, with remainder in fee to his children. By paragraph 5 he devised to his son Fred for life, with remainder in fee to his children, lot 9, in block 7, except twenty feet off the south side, in the town of Normal, and upon which there was a double-front store. By paragraph 6 he devised to his son Otto for life, with remainder in fee to his children, premises in Normal known as 205 Beaufort street and which are described by metes and bounds. By

263 – 35

paragraph 7 he gave his daughter Edith Bower for life, with remainder in fee to her children, premises on which were a residence and a barber shop, and described as lot 11, in block 7, in town of Normal. By paragraph 8 he gave his daughter Emma Dement for life, with remainder in fee to her children, premises described by metes and bounds, known as 201 and 203 West Beaufort street, in the town of Normal. By the ninth paragraph he gave to his daughter Mollie Hale for life, with remainder in fee to her children, premises in Normal known as 209 and 211 West Beaufort street, and a vacant lot adjoining, described by metes and bounds. By the tenth paragraph he directed his executor to purchase for his daughter Rose Hartley a home in Newark, Illinois, at a cost not to exceed $1000, as soon after his death as convenient. August Fissel, Jr., was appointed executor of the will.

After answers and replications were filed, issues were made and submitted to a jury whether the testator was of sound mind and memory when he executed the will, whether its execution was procured by the undue influence of August Fissel, Jr., and whether the writing purporting to be his will was the last will and testament of August Fissel, Sr. The jury found in favor of the proponents of the will on all these issues, and the court entered a decree in conformity with the finding of the jury, from which the contestants have prosecuted this appeal to this court.

There is no ground in this record for controversy over the proposition that the testator was of sound mind and memory until within a period not exceeding a year before his death, and there is little substantial ground for controversy over the question whether at any time up to the time the will was executed his mind and memory were so impaired as to incapacitate him from making a valid will. The last year or two of his life he was in bad health a good part of the time, but the greater part of that time he was in his store, attending to business. He complained to several

persons, at different times, of his health, and said he was no good any more; that his head hurt him; that he was unfit to do business and that he was all in. When the assessor called on him to assess his property he said he was unable to attend to it and directed the assessor to go to his son August. He did the same thing when a special assessment collector called on him about paying a special assessment. At times when customers came into his store he was indifferent about waiting on them. He had contemplated making his will for a long time and had talked of it to acquaintances. He took the memorandum from which the will was prepared, to the lawyer who drew the will. The testator could not read or write and the memorandum was in the handwriting of his son August, Jr. The will was prepared by a lawyer several days before it was executed, but he was requested to keep it until the daughter Rose Hartley, who had been written to, could be heard from. The terms of the will are not inconsistent with anything the testator said to anyone with whom he talked about making his will. When it was executed he was ill with pneumonia and died a few days after. One of the witnesses to the will was the lawyer who drew it, and he testified that the testator knew and comprehended what he was doing and that he was of sound mind. The attending physician was the other witness. The most the doctor would say was that he doubted whether he was of sound mind, though he testified he examined him and took his pulse, temperature and respiration before the will was executed, at the request of the lawyer who drew it, for the purpose of determining whether he was of sound mind at that time. We do not think the decree is contrary to the evidence upon this issue as to the soundness of mind of the testator at the time the will was executed.

August Fissel, Sr., only owned the undivided one-half of the 82-acre farm. His wife owned the other undivided one-half, but in his will he devised it as if he were the

sole owner, and he made no disposition of his personal estate. From this it is argued it clearly appears the testator did not comprehend what property ·he had to dispose of. We do not think such conclusion necessarily follows. The draughtsman of the will called his attention to the fact that he was not disposing of his personal estate, and the testator said he only wanted to dispose of his land. That he devised the farm without referring to the fact that he only owned one-half of it, or describing the interest devised, is not a circumstance of such conclusive character as to require finding he did not possess testamentary capacity, in view of the abundant testimony that he was of sound mind and memory.

It is earnestly contended the testator's son August was his confidential adviser; that said son was one of the chief beneficiaries in the will; that he was connected with making it and was present at the time it was executed, and that from these circumstances undue influence is presumed, and the burden rested upon August Fissel, Jr., to prove that the execution of the will was the deliberate act of the testator and not the result of the undue influence of the son. The undue influence that will invalidate a will has been defined in *Hurd v. Reed,* 260 Ill. 154, and cases there cited. The proof does not show the testator to any great extent relied on the judgment of his son August about business affairs. He was unable to read and write, and August, whose place of business was near his father's, did work of that kind for him when desired. He also referred the assessor and special assessment collector to August when he said he was not well. His affection for August apparently was no greater than for his other sons, but he did seem to have more confidence in the thrift and ability of his sons to make money and care for property, especially August and Otto, than he had in his daughters or their husbands. It is true, August wrote the memorandum from which the will was prepared, but the testator, alone, took it to his lawyer,

who read it over to him and talked with him about it and the disposition it showed he wanted made of his property. The lawyer testified he told him the memorandum showed no provision for the testator's wife, and he requested the lawyer to put some provision in the will for that purpose. After talking it over he agreed to the provision made in the second paragraph of the will. August was present when the draft of the will was brought to his father's residence by the lawyer who wrote it, to be executed, and before the doctor came he had spoken to a barber near by to be one of the witnesses. At his father's request August signed the testator's name to the will. August gets a life estate, with remainder in fee to his children, in property of greater value than either of his brothers and of much greater value than either of his sisters, but in our opinion, even if the burden was upon him to show he did not influence the testator in making the distribution of his property made by his will, it cannot be said the finding of the jury on the issue of undue influence was not supported by the evidence. The trust and confidence reposed in August by his father were of a very slight character, and the acts of the son in connection with the making of the will were not of a character to indicate, or at least strongly indicate, that the testator was acting under his influence. It may be, as contended, that the will was an unjust one to some of the testator's children, but the jury having found that he was of sound mind when he made it, that it was not procured by undue influence and that it was the will of August Fissel, Sr., and there being an abundance of proof tending to sustain the findings and decree based thereon, a court of review would be unwarranted in reversing such findings and decree. *Judy* v. *Judy,* 261 Ill. 470; *Voodry* v. *University of Illinois,* 251 id. 48.

The conclusion we have reached on the evidence renders unnecessary a discussion of the complaint of the court's

ruling's in giving and refusing instructions, as no error was committed in that respect that would justify a reversal of the decree.

The decree of the circuit court is affirmed.

*Decree affirmed.*